NEWARK BRASS PLATE AND ENGRAVING COMPANY et al.,
appellants,

*v.*

THE CITIZENS NATIONAL BANK OF NETCONG, respondent.

[Decided February 6th, 1919.]

On appeal from a decree of the court of chancery advised by
Vice-Chancellor Stevens, who filed the following opinion:

"This is a bill to set aside a settlement because induced by
fraudulent representation.

"In 1913 two corporations—the Newark Brass Plate and En-
graving Company and the James N. Morehouse Company—were
doing business in Newark under the management and control
of one Van Sickle. They owed the complainant, bank, $9,300
on a judgment recovered by it. The bank held stock of these
corporations as collateral and had, in December, 1913, issued
execution and made a levy upon their tangible property. While
matters stood thus, the defendant Umbehend bought at private
sale both the stock and the property. On December 31st, 1913,
he entered into a formal agreement of purchase in which the
bank and Van Sickle joined. One of the terms of the agree-
ment was that the respective companies were each to give the
bank a note for $3,250 endorsed by Umbehend. The notes were
payable three months after date, and were to be continued by
successive renewals for a period of one year; and if $4,200
should be paid in that year, they were to be considered fully
satisfied.

"After taking over the conduct of the business, Umbehend
borrowed money to increase the plants. On September 7th,
1914, a fire broke out in the building in which they were in-
stalled. The plant of the Brass Plate and Engraving Company
was practically destroyed, and that of the Morehouse company

seriously damaged. The insurance was adjusted in the case of the former company at $5,642.36, and in the case of the latter at $2,666.18, and promptly paid.

"On October 6th, 1914, Umbehend wrote to the complainant bank in reference to the two notes which he had endorsed. Among other things, he said:

"'It is therefore my desire to adjust this obligation in an honorable way as possible rather than to place the concerns in bankruptcy, for I have never done a wrong to any one, and it is my purpose now to come out and place the conditions before you.

"'In the midst of these difficulties (referred to in a former part of this letter) a fire starting on September 7th on the third floor destroyed one of the portions of the Newark Brass Plate and Engraving Company on the fourth floor, and the portions not damaged by fire were more or less drenched with water. Several weeks were required for adjustment and finally the matter has been settled.

"'This building being considered a dangerous risk by insurance companies, it had been a very difficult thing to obtain insurance at any rate, and for this reason *the insurance carried was very small. We, therefore, settled the loss on the two companies for $1,050.'*

"Some correspondence followed the receipt of this letter. On October 27th Umbehend went to Netcong and saw the president and vice-president of the bank, with the result that the bank agreed to surrender the two notes, amounting in the aggregate to $6,500, on payment of $1,000 in cash and on receipt of a note of Umbehend (the companies not joining) for $2,400.

"To the question 'Why didn't you put it in the letter that you had collected $8,000 insurance?' Umbehend replied:

"'Simply because from the dealings I had had with the bank out there, they acted as hungry wolves after me all the time, and if I had went out there and told them that I had gotten $8,000, they would have said—they would have grabbed on to the $6,250, and the other creditors could have went to the old Harry.'

"According to his evidence these other creditors were principally a Newark trust company and his wife.

"Not paying the new note the bank sued and took judgment on it. On supplementary proceedings the bank was for the first time informed that the amount received from the insurance companies was $8,300 instead of $1,050.

"When asked why he made the false representation, Umbehend excused himself by saying that $1,050 was the appraised value of the tangible property acquired as the result of his contract with the bank and Van Sickle. But even this explanation does not, on his own statement, accord with the fact, for he testifies that an appraiser, selected by him after he had taken over the property, had valued the tangible assets of the brass company at $680, and of the Morehouse company at $430, or $1,110 in all.

"That the false statement induced the settlement is conclusively proved. Being material, it avoids it and puts the bank back into the position in which it stood before it was made. The bank stands as the creditor of the respective companies on their notes.

"The defendants raise various objections. First, they say that the complainant has not by its bill offered to return the $1,200 received. It is not very obvious why it should. Whether the companies be considered as indebted on their notes of $3,250, or whether they be regarded as debtors under the new arrangement, they, or Umbehend for them, owed this money. In his letter of October 28th, written the day after settlement, Umbehend says: 'It is hereby agreed and accepted that the writer agrees to pay the sum of $3,400 *for the two concerns.*' If he gave his personal note for $2,400, he did it therefore on their behalf. The $1,000 cash payment was unquestionably made in respect of the $6,500 indebtedness. The $2,400 note was given to satisfy what remained of it under the arrangement. Under these circumstances, it would be highly inequitable to compel the complainant to return any part of that which he was entitled to under either arrangement.

"The next point made by defendant's counsel is that the complainant is not entitled to any relief against the two corporations. His insistence is that under the terms of the agreement of December 31st, 1913, the companies issued their notes for $3,250, each without consideration, and that therefore the new settlement, as far as they are concerned, has no legal basis on which to stand. It is enough to say that the agreement has stood unchallenged for over four years and is not now attacked

in the pleadings.   I may add that it is somewhat difficult to understand what counsel means when he says 'that the written evidence of the conference of October 27th shows the resale of the concerns to Umbehend.'   There was no resale; only a cutting down of the debt.   He seems to base himself upon a misconception of the obvious meaning of the clause in Umbehend's letter of October 28th, in which he says 'the writer agrees to pay the sum of $3,400 *for* the two concerns.'   Evidently, the word 'for' means 'on behalf of.'

"Counsel's next contention is that the misstatement did not injure the complainant.   This may be best answered in the words of his client:

'If I had went out there and told them that I had gotten the $8,-000, they would have grabbed on to the $6,250, and the other creditors would have went to the old Harry.'

"The last objection that requires notice is that the bill is multifarious, because filed (*a*) to set aside the settlement of October 27th; (*b*) to have a receiver appointed for the two corporations; (*c*) to have the receiver recover from the American Art Metal Company the insurance money alleged to have been diverted to its use.

"Undoubtedly, a bill combining these different objects would have been deemed multifarious under the former practice.   The recent Chancery act has made the question largely one of convenience.   There can be no question but that the settlement of October 27th should be decreed to be fraudulent.   As the two concerns are so entirely within the control of one man; as they and their assets have, in all that has occurred within the last five years, been dealt with in the same way; as no useful purpose would be subserved by compelling the complainant to institute two new suits, one in the case of each company, for the appointment of a receiver, after the complainant has by decree been remitted to his original right; and as, practically, all of the evidence bearing on the subject of the companies insolvency has come from Umbehend himself, and as the companies have been dissolved by proclamation of the governor, I think it would be conducive to the speedy determination of the controversy, if

the court now adjudged the companies insolvent and appointed (after hearing) a receiver. I do not think the court can or ought to go any further. The receiver must determine, after proper inquiry, whether he has any cause of action, legal or equitable, against Flora Umbehend, trading as the American Art Metal Company, or against any one else, and whether, if he has, it is expedient to proceed further."·

*Messrs. Congleton, Stallman & Hoover,* for the appellants.

*Messrs. King & Vogl,* for the respondent. ·

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Stevens.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—12.

*For reversal*—None.